IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2020

**IN RE CAYDAN T.**

**Appeal from the Juvenile Court for Tipton County**
**No. 18-JV-243      William A. Peeler, Judge**
_____

**No. W2019-01436-COA-R3-PT – Filed April 7, 2020**
_____

Mother appeals the termination of her parental rights, which the trial court granted on the grounds of persistent conditions, severe child abuse, and failure to manifest a willingness and ability to parent. Mother also appeals the trial court's finding that the termination of her parental rights was in the child's best interests. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which JOHN W. MCCLARTY, and W. NEAL MCBRAYER, JJ., joined.

Lauren A. Raynor, Covington, Tennessee, for the appellant, Jessica T.

Herbert H. Slatery, III, Attorney General and Reporter; Matt D. Cloutier, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**BACKGROUND**

Respondent/Appellant Jessica T. ("Mother") is the mother of Caydan T. ("the Child"), who was born in 2013.[1] On March 22, 2018, Petitioner/Appellee Tennessee Department of Children's Services ("DCS") took custody of the Child the day after Mother was arrested on charges of possession of a controlled substance and possession of drug paraphernalia. A hair follicle drug screen was performed on the Child, which tested positive for methamphetamine. At the time, Mother told a DCS worker that she had been using and selling methamphetamine for at least two years with her boyfriend. Mother

---

[1] In cases involving the termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect their identities.

acknowledged receipt of the criteria for termination of her parental rights on April 17, 2018. The Tipton County Juvenile Court ("the trial court") later adjudicated the Child dependent and neglected and the victim of severe child abuse perpetrated by Mother in an order entered on July 25, 2018. Mother did not attend the dependency and neglect hearing and did not appeal the order. Her visitation with the Child was suspended following the finding of severe child abuse.

Following the finding of severe child abuse, DCS attempted to help Mother address her substance abuse problems by making appointments for her with a treatment facility and trying to obtain transportation for her to go to the facility. Mother missed the appointment. Mother again received the criteria of the grounds to terminate parental rights on August 7, 2018. Mother eventually admitted herself in a different drug treatment facility in late 2018. However, she withdrew from the program in its final week, telling workers that she needed to leave to care for a dying relative.

DCS filed a Petition to Terminate Parental Rights against Mother on October 22, 2018.[2] In the petition, DCS alleged that Mother's parental rights should be terminated on the grounds of persistence of conditions, severe child abuse, and a failure to manifest a willingness and ability to parent the child. Mother denied the allegations tied to each ground in an answer filed February 12, 2019.

The trial court held a termination hearing on May 29, 2019. A DCS worker testified to the circumstances that led to the removal of the Child from Mother's care and the efforts that DCS made to address Mother's substance abuse and mental health issues. The DCS worker claimed that she could not remember Mother passing a drug screen and that Mother had been upfront about her consistent methamphetamine use. Further, the DCS worker stated that the Child's health and behavior had improved considerably in foster care and would likely be negatively affected if he returned to Mother's care. Mother's home at the time the Child was removed was considered "very poor," but the DCS worker was unable to evaluate Mother's new residence at the time of the hearing. The Child's foster parent testified that she had cared for the Child for about six weeks and sought to adopt him, if possible. The foster parent said that the Child had improved considerably in the weeks before the hearing.

After DCS closed its proof, Mother testified on her own behalf after being warned of possible implications that her testimony might have in pending criminal matters. Mother stated that she loved her child, would care for him, and that he would never "be mistreated again." Mother said she needed the Child "to be free from the burdens that [Mother had] been going through." Mother testified to her attempts to quit methamphetamine, though

---

[2] The Petition to Terminate Parental Rights also included Nicholas M., who was considered the Child's putative father at the time. The trial court later dismissed this individual from the petition, as he did not meet the definition of a putative father under state statute.

she admitted that she had been exposed to amphetamines her entire life and that "it's been about three, four days since [she] used." She stated that the drugs she used kept her focused, calm, and allowed her to work around the home. Further, Mother stated that the Child also needs medication "to calm him down, to keep from going insane, to keep him rounded." Although Mother entered drug abuse treatment, she left the program in its final week because "something kept telling [her] to go home." Mother admitted lying to the treatment center about having a dying relative in order to leave the center. Further, Mother stated that she was undergoing a "spiritual battle" and that she stopped taking prescribed medication for her mental health "because they would have stopped [her] from finishing [her] spiritual battle." Further, Mother claimed her drug use allowed her to defeat the "demons" she associated with her spiritual battle. Mother claimed that she had passed a state-issued mental evaluation "in thirty minutes" and had worked to create a home where she could be a better parent. At the close of proof, the trial court took the matter under advisement.

The trial court issued an order terminating Mother's parental rights on July 17, 2019. The trial court found clear and convincing evidence that warranted the termination on the grounds of persistent conditions, severe child abuse, and a failure to manifest a willingness and ability to assume legal and physical custody of the Child. Mother timely filed this appeal.

## ISSUES PRESENTED

On appeal, Mother challenges the trial court's findings as to both the grounds for termination found by the trial court and the trial court's finding that termination was in the child's best interest.

## STANDARD OF REVIEW

The Tennessee Supreme Court has previously explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102

S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interests by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523–24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524.

Lastly, in the event that the "resolution of an issue in a case depends upon the

- 4 -

truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## DISCUSSION

### A. Grounds for Termination

While Mother has broadly appealed the trial court's findings for each ground for termination, the only ground specifically addressed in her argument is persistence of conditions. Nevertheless, as directed by our supreme court, we will examine each ground for termination whether the ground was the specifically addressed by the parent or not. *In re Carrington H.*, 483 S.W.3d at 525–26. The trial court found three grounds for termination of Mother's parental rights: persistence of conditions, severe child abuse, and a failure to manifest an ability and willingness to assume legal and physical custody of the Child.

### 1. Persistence of Conditions

The trial court first found a ground to terminate Mother's parental rights for persistence of conditions under Tennessee Code Annotated section 36-1-113(g)(3). Under state statute, a ground to terminate parental rights exists when:

(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard;

Tenn. Code Ann. § 36-1-113(g)(3). As this Court has previously stated:

> "A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (citing *In re T.S. & M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. & M.S.*, 2000 WL 964775, at *6 (citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "Where . . . efforts to provide help to improve the parenting ability, offered over a long period of time, have proved ineffective, the conclusion is that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.* The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Dakota C.R.*, 404 S.W.3d 484, 499 (Tenn. Ct. App. 2012) (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008) (quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008))).

*In re Jaylah W.*, 486 S.W.3d 537, 555-56 (Tenn. Ct. App. 2015).

Here, there is no dispute that the Child was removed from Mother's custody by a protective custody order and later adjudicated dependent and neglect more than six months prior to the start of the termination trial. *See* Tenn. Code Ann. § 36-1-113(g)(3)(B). On appeal, Mother generally argues that state officials failed to properly investigate whether the conditions that led to the Child's removal still persist. In particular, Mother states that DCS failed to investigate whether her new residence would serve as stable housing and failed to ensure that Mother received drug and mental health treatment before the dependency and neglect hearing. DCS contends that Mother is still unable to fundamentally care for the Child, so the conditions that led to his removal would still remain.

Respectfully, Mother's argument lacks merit. The Tennessee Supreme Court has held that while DCS' efforts to reunify a family should be considered in determining a child's best interest, "proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) (noting an exception for abandonment for failure to establish a suitable home). With

that in mind, DCS is under no obligation to ensure Mother received treatment or obtained proper housing before it can establish a finding of persistent conditions.

From our review, DCS has met its burden to show all the required elements of persistent conditions in this case. Mother's own testimony showed that at least some of the conditions that led to the Child's removal have not been remedied. Indeed, Mother testified that she continued to use methamphetamine days before the termination hearing. While Mother entered an inpatient drug treatment program, she failed to complete the program and admittedly lied to officials to leave the facility. Mother also obtained a mental health evaluation while incarcerated yet refused to take her prescribed medication out of fear that the medication would lead her to lose her "spiritual battle."

As shown *supra*, the Child was removed from Mother's custody in large part because of Mother's consistent drug use and the presence of drugs in her home. Mother made clear through her own testimony that she continued to use methamphetamine, did not complete her required treatments, and saw her drug use as necessary for her to function. At the very minimum, Mother's drug use led to the removal of the Child and would likely continue even if she regained custody of him. This would prevent the Child's safe return to his Mother's care and seriously diminish the likelihood that he would be integrated into a safe, stable home. Further, the Child's foster family, one that wishes to adopt him, would provide a safe, stable and permanent home where he has already shown personal growth. For these reasons, we conclude that the trial court did not err in finding a ground to terminate Mother's parental rights through persistent conditions.

## 2. Severe Child Abuse

The trial court also found that severe child abuse existed as defined by Tennessee Code Annotated section 36-1-113(g)(4). A ground for termination exists where "[t]he parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights[.]" Tenn. Code Ann. § 36-1-113(g)(4). Severe child abuse has various definitions, including "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death." Tenn. Code Ann. § 37-1-102(b)(27)(A)(i). Clear and convincing evidence of severe child abuse is present when a child is exposed to methamphetamine. **In re A.L.H.**, No. M2016-01574-COA-R3-JV, 2017 WL 3822901, at *5 (Tenn. Ct. App. Aug. 31, 2017) ("This Court has repeatedly held that exposure of a child to drugs constitutes severe child abuse."); *see also* **In re Mason E.**, No. E2015-01256-COA-R3-JV, 2016 WL 2931190, at *6–7 (Tenn. Ct. App. May 16, 2016) (holding that a child's presence in a building where methamphetamine was made can constitute clear and convincing evidence of severe child abuse through knowing exposure or knowingly failing to protect a child likely to cause severe bodily injury or death). Further, a severe abuse finding in a dependency and neglect

action becomes final when it was not timely appealed following the dependency and neglect hearing. ***In re Karisah N.***, No. M2018-00555-COA-R3-PT, 2018 WL 6179470, at \*10 (Tenn. Ct. App. Nov. 27, 2018); ***In re Dakota C.R.***, 404 S.W.3d 484, 497–98 (Tenn. Ct. App. 2012). In the present case, the trial court found that the Child was the victim of severe child abuse as defined by Tennessee Code Annotated section 37-1-102(b)(22)(A) in a dependency and neglect order entered on July 25, 2018. This finding was based on his positive hair follicle test for methamphetamine and the testimony of a DCS case manager. Mother failed to appeal the dependency and neglect order. Therefore, any effort to challenge the severe child abuse finding in the dependency and neglect order is res judicata in this appeal. Consequently, the trial court did not err in finding a ground for terminating Mother's parental rights through severe child abuse under Tennessee Code Annotated section 36-1-113(g)(4).

### 3. Willingness and Ability

Lastly, the trial court found a ground to terminate Mother's parental rights based on her failure to manifest a willingness and ability to parent the child. A ground to terminate parental rights exists when a parent

> failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). In essence, the statute requires two distinct elements to be proven with clear and convincing evidence.

> First, DCS must prove that [the parent] failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." DCS must then prove that placing the children in [the parent's] "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]."

***In re Maya R.***, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at \*7 (Tenn. Ct. App. Apr. 4, 2018) (quoting Tenn. Code Ann. § 36-1-113(g)(14)).

A parent's willingness and ability to personally assume custody of his or her child requires more than mere words. ***In re Cynthia P.***, No. E2018-01937-COA-R3-PT, 2019 WL 1313237, at \*8 (Tenn. Ct. App. Mar. 22, 2019). When examining a parent's ability, we focus on "the parent's lifestyle and circumstances." ***Id.*** When evaluating a parent's willingness to assume custody, we look at the parent's efforts "to overcome the obstacles that prevent [him or her] from assuming custody or financial responsibility for the child." ***Id.*** The actions of a parent can establish a lack of willingness to assume legal and physical custody of a child. *See **In re J'Khari F.***, No. M2018-00708-COA-R3-PT, 2019 WL

411538, at *15 (Tenn. Ct. App. Jan. 31, 2019) (citations omitted) ("Regarding willingness, a parent's actions can demonstrate a lack of willingness to assume custody of or financial responsibility for the Child.").

Sufficient evidence exists that Mother failed to manifest a willingness to assume custody and financial responsibility for the Child. *Cf. In re Jaxx M.*, No. E2018-01041-COA-R3-PT, 2019 WL 1753054, at *8 (Tenn. Ct. App. Apr. 17, 2019) (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *12 (Tenn. Ct. App. June 20, 2018); *In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018)) (recognizing a dispute over what proof is required to meet this ground for termination, but avoiding the dispute by noting that the proof was sufficient under even the more stringent ground). While Mother testified that she was more than willing to parent the Child, her actions simply do not match her assertions. In the months following Mother's loss of custody, she continued to use methamphetamine, failed to take prescribed medication for her mental health, and lied to leave substance abuse treatment before its completion. Mother's actions do not reflect an effort to overcome the obstacles she faced to regain custody. *See In re Cynthia P.*, 2019 WL 1313237, at *8. On the contrary, her actions show behavior that is largely unchanged since she lost custody of her Child. While we do not deny that Mother has expressed a desire to care for the Child, she has not shown a willingness or ability to take legal and physical custody of her son. The trial court therefore did not err in finding that Mother failed to manifest the necessary willingness and ability to parent her Child.

The second prong of the willingness and ability analysis requires this Court to question whether placing the Child back in Mother's custody would create a risk of psychological or physical harm to the child. *In re Maya R.*, 2018 WL 1629930, at *7. As this Court has stated:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

Mother's consistent drug use and incarceration tied to her drug use reflects that she could not assume custody of the Child without placing him in danger of substantial harm. Importantly, the Child was exposed to methamphetamine while in Mother's care, resulting

in severe abuse to the Child. Mother's continued use of methamphetamine even in the days before trial leads this Court to believe that the Child would likely be exposed again if returned to Mother's custody. Indeed, we have little confidence that Mother will be able to stop using illegal drugs; the tenor of Mother's testimony indicates that she has no desire to stop using illegal drugs, as she believes that they, but apparently not prescribed medications, are necessary for her to function properly. Mother's beliefs also appear to extend to the Child, as she stated that giving amphetamines to her son would be appropriate "to calm him down, to keep him from going insane, [and] to keep him rounded."[3] To take the Child away from a pre-adoptive home and place him back in Mother's care under these circumstances would create a serious and significant risk to his physical and psychological health, stability, and well-being. Because of this, the trial court did not err in finding that substantial harm could come to the Child if Mother regained physical and legal custody. Thus, the trial court correctly found a ground for terminating Mother's parental rights because of a failure to show a willingness and ability to parent her child under Tennessee Code Annotated section 36-1-113(g)(14).

## B.     Best Interests

As at least one ground for termination is supported by clear and convincing evidence, we now consider whether clear and convincing evidence supports the trial court's determination that termination of Mother's parental rights is in the Child's best interests. "Upon establishment of a ground for termination, the interests of the child and parent diverge, and the court's focus shifts to consider the child's best interest." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). Even where a parent is unfit, termination may not necessarily be in the best interests of the child. *Id.*

Tennessee's termination statute lists the following factors to be used in the best interest analysis:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other

---

[3] There is some indication in the record that the Child had in fact been diagnosed with Attention Deficit Hyperactivity Disorder, for which the Child was medicated after removal by DCS. The record does not specifically show either that the medicine prescribed to the Child was an amphetamine or that Mother ever received a medical diagnosis and prescription for the Child's alleged medical issue while in her custody.

contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). The Tennessee Supreme Court has explained that:

Facts considered in the best interests analysis must be proven by a preponderance of the evidence, not by clear and convincing evidence. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. When considering these statutory factors, courts must remember that the child's best interests are viewed from the child's, rather than the parent's, perspective. Indeed, a focus on the perspective of the child is the common theme evident in all of the statutory factors. When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child.

*In re Gabriella D.*, 531 S.W.3d 662, 681–82 (Tenn. 2017) (internal citations omitted). Furthermore, "[a]scertaining a child's best interests does not call for a rote examination"

of the statutory factors. ***In re Audrey S.***, 182 S.W.3d at 878. The analysis requires "more than tallying the number of statutory factors weighing in favor of or against termination." ***In re Gabriella D.***, 531 S.W.3d at 682 (citing ***White v. Moody***, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004)). "The facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case," and the analysis "must remain a factually intensive undertaking." ***In re Gabriella D.***, 531 S.W.3d at 682. Thus, "[d]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." ***Id.*** (citing ***In re Audrey S.***, 182 S.W.3d at 878). In undertaking this analysis, the court must examine all of the statutory factors, as well as other relevant proof put forth by the parties. ***Id.***

DCS argues through the statutory factors that termination of Mother's parental rights is in the best interests of her child. Mother, however, contends that she loves her son, wishes to regain custody of him, and possesses a constitutional right to the care, custody, and control of her child. As stated *supra*, state courts recognize parents' rights to care for their children as fundamental, but not absolute. ***In re Angela E.***, 303 S.W.3d at 250.

In the present case, termination of Mother's parental rights would serve the best interests of the Child. While she argues that she sought to improve her situation when the termination proceedings occurred, Mother's continued methamphetamine use and inability to complete treatment indicate a failure to make a lasting adjustment of circumstances so as to allow a safe return of the Child to Mother's custody. Tenn. Code Ann. § 36-1-113(i)(1). While Mother argues that DCS failed to adequately assist her in receiving treatment, DCS did make efforts to enroll Mother in treatment programs and provide transportation for her to attend appointments. Mother rejected those efforts, entering a treatment program on her own only to withdraw from it before completion. Mother continued to use methamphetamine up until the days before the termination hearing. Despite the state's efforts, Mother failed to alter her circumstances in a positive and demonstrable way. Tenn. Code Ann. § 36-1-113(i)(2).

The record reflects that Mother's visitation was suspended due to the severe child abuse order and that the Child has not interacted with Mother in the year before the termination hearing. Tenn. Code Ann. § 36-1-113(i)(3). We have previously affirmed the severe abuse finding; as such, there can be little dispute that the suspension of visitation was warranted. Mother has not seen the Child since visitation was suspended nearly one year before the termination hearing and has not maintained a meaningful relationship with him since then. Tenn. Code Ann. § 36-1-113(i)(4). The trial court further found that a change in caretakers would likely worsen the Child's emotional, psychological, and mental conditions, and we agree. Tenn. Code Ann. § 36-1-113(i)(5). The Child's health and behavior have improved while living in a pre-adoptive foster home, and Mother's testimony indicates that she would not parent him in an altogether different way from when she lost custody of him. The trial court previously found that the child was the victim of severe abuse under Mother's care due to his positive hair follicle screen from

methamphetamine. Tenn. Code Ann. § 36-1-113(i)(6). Mother's continued drug use, related criminal charges, and unaddressed mental health issues would render Mother consistently unable to care for the Child or provide him with safe and stable care and supervision. Tenn. Code Ann. § 36-1-113(i)(7). The record, however, does not reflect whether Mother provided child support for him while the termination action was pending. Tenn. Code Ann. § 36-1-113(i)(8).

On the whole, the relevant factors show that the most important part of Mother's life is not the Child, but Mother's continued use of methamphetamine. Mother had been informed on multiple occasions what activities could result in the permanent cessation of her relationship with the Child. Yet, Mother continued to use illegal drugs even knowing that this termination trial was days away. While we are cognizant of the significant barriers that individuals face in attempting to fight addiction, Mother's own testimony indicates that she is not willing to make the effort to change her lifestyle. Indeed, at times, Mother does not seem to believe that she has a problem at all. And even more concerning, Mother's testimony suggests that she may continue to expose the Child to drugs in the future. The evidence was therefore abundantly clear that termination of Mother's parental rights was both necessary and appropriate in this case.

## CONCLUSION

The judgment of the Tipton County Juvenile Court is affirmed. This cause is remanded to the trial court for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Jessica T., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE